UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO VASQUEZ, <br><br> Plaintiff, <br><br> v. <br><br> RANDSTAD US, L.P., et al., <br><br> Defendants. | Case No. 17-cv-04342-EMC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO TRANSFER VENUE AS MOOT** <br><br> Docket Nos. 39, 44 |

This is a wage-and-hour class action alleging violations of the California Labor Code, including for requiring employees to work through their meal breaks, resulting in work without pay, unpaid overtime, meal and rest break violations, and associated penalties. Plaintiff moves to remand, arguing Defendants have not met their burden under the Class Action Fairness Act (CAFA) of demonstrating that the amount-in-controversy exceeds $5 million. Defendants also move to transfer venue to the Central District of California, arguing that Plaintiff is forum-shopping—Plaintiff lives and worked in Los Angeles County, all of his managers and supervisors reside in Los Angeles County, and only 17% of putative class members reside in this district.

The Court resolves the motion to remand first because it is jurisdictional.[1] For the reasons stated below, the motion is **GRANTED** because Defendants have failed to establish that the amount-in-controversy exceeds $5 million. Accordingly, Defendants' motion to transfer venue is **DENIED** as moot.

---

[1] *See*, *e.g.*, *Ingman v. FCA US LLC*, 2017 WL 5465521, at *2 (D. Mon. Nov. 14, 2017); *Medina v. Oanda Corp.*, 2017 WL 1159572, at * (N.D. Cal. Mar. 29, 2017).

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Alfredo Vasquez filed a class action complaint against Defendants Randstad U.S., LP ("Randstad"), and XPO Logistics Freight, Inc. and XPO Logistics Worldwide, LLC (collectively, "XPO") in the Superior Court of Alameda on June 15, 2017. On July 31, 2017, after Plaintiff had filed a First Amended Complaint and all Defendants had answered, Randstad filed a notice of removal under the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d)(2), on July 31, 2017. *See* Docket No. 1.

Plaintiff seeks to represent a class of employees apparently placed by staffing agency Randstad at XPO to perform jobs related to loading and unloading containers. Plaintiff alleges that he and other employees were "consistently required to work through their meal periods due to Defendants' policy and practice of requiring them to finish loading and unloading containers on a strict schedule before allowing them to take a meal break, which was not provided at all times." *Id.* This appears to be the factual basis for most of Plaintiff's legal claims, including failure to pay minimum wage, *id.* ¶¶ 24-29, failure to pay overtime wages for work in excess of 8 hours a day or 40 hours a week, *id.* ¶¶ 30-33, failure to provide full and adequate meal breaks for work in excess of 5 hours, *id.* ¶¶ 34-38, failure to provide accurate wage statements, *id.* ¶¶ 44-48, failure to pay all wages due upon termination, *id.* ¶¶ 49-53, and derivative claims under California's Unfair Competition Law, *id.* ¶¶ 54-63. Plaintiff also alleges failure to provide rest breaks for work in excess of 4 hours, *id.* ¶¶ 39-43.

Defendants' opposition[2] to Plaintiff's motion to remand is supported by a declaration by a Randstad paralegal based on searches performed on Randstad's payroll systems and databases. Lubrano Decl. ¶ 4.[3] The declaration sets forth estimates for various categories of damages based

---

[2] Defendant Randstad filed an opposition, and the XPO Defendants separately filed a "joinder" to the opposition. *See* Docket No. 50. Accordingly, the Court refers to "Defendants" collectively.

[3] Defendant Randstad had previously attached a declaration in support of its Notice of Removal. In connection with his motion, Plaintiff filed evidentiary objections to that earlier declaration. Because a new declaration has been filed, and that declaration is the operative one, Plaintiff's objections to the earlier declaration are moot; he has not filed objections to the new declaration. Even if the Court were to consider them, however, the objections are meritless. Plaintiff objects in a scorched-earth fashion to every statement in the declaration, alleging it is hearsay, without foundation, violates the original writing rule, or requires further evidentiary support. However,

on information about the number of class members employed during the class period, the number of class members terminated during that time, and their average hourly wage. The declaration does not provide any estimate of the total hours worked or whether employees were part- or full-time. Defendants calculate the amount-in-controversy as follows:

| Category | Amount |
|---|---|
| Meal and Rest Break Violations | $1,677,500 |
| Waiting Time Penalties | $1,883,520 |
| Inaccurate Wage Statements | $251,250 |
| Minimum Wage Violations | $603,900 |
| Overtime Violations | $629,062.50 |
| **Total:** | **$5,045,232.50** |
| Attorneys' Fees *25% benchmark* | $1,261,308.13 |
| **Total w/ Attorneys' Fees:** | **$6,306,540.63** |

## II. DISCUSSION

A. Legal Standard

Under CAFA, federal subject matter jurisdiction exists over class actions when (1) there are more than 500 class members; (2) defendant's citizenship is diverse from the citizenship of at least one putative class member or plaintiff; and (3) the amount-in-controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(5)(B). The parties do not dispute diversity of citizenship or the size of the class. The only dispute is the amount-in-controversy.

In a CAFA case, a defendant's notice of removal need only "contain[] a short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014). The amount-in-controversy allegations must be "plausible." *Id.* at 554. Plaintiff cites non-CAFA cases to argue that there is a "strong presumption" against federal removal jurisdiction, Mot. at 5, but *Dart* holds that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in

---

the declarant states that she has personal knowledge of the facts therein, and explains the foundation for her statements (review of payroll data and searches executed on the payroll database). She is not required to submit the database itself as an attachment to her declaration. Thus, the Court overrules Plaintiff's objections.

3

federal court." *Id.* at 554.

If the plaintiff's complaint does not claim a particular sum, then "the defendant seeking removal bears the burden to show a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The parties may then "submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment type evidence relevant to the amount in controversy at the time of removal." *Id.* (quotation and citation omitted). A defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* The Court is to consider "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* Moreover, "[w]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.* 775 F.3d 1200, 1202 (9th Cir. 2015).

B. <u>Analysis</u>

The central dispute is whether Defendants' assumption of a 100% violation rate to calculate the amount-in-controversy is reasonable. Defendants argue that it is because Plaintiff alleges "consistent" failure to provide rest-and-meal breaks and failure to pay overtime. Plaintiff argues that a 100% rate is unreasonable and that Defendants must present evidence of the actual violation rate; Plaintiff does not propose an alternative violation rate.

1. <u>Does "Consistent" Mean "Always"?</u>

Whether a CAFA defendant may assume a 100% violation rate has become a common question that requires parsing a Plaintiff's allegations. In *Ibarra*, for example, the Ninth Circuit considered whether it was reasonable for a defendant to rely on a 100% violation rate (*i.e.*, missed meal and rest break during each shift) where the plaintiff had alleged a "pattern and practice of failing to pay [employees] for working off-the-clock." 775 F.3d at 1198. The Ninth Circuit concluded that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something," nor that the pattern "is universally followed every time the wage and hour

4

violation could arise." *Id.* at 1198-99. That is particularly so where the named plaintiff alleged violations on "'multiple occasions during his employment,' suggesting that [the employer's] practices occurred several times but not on each and every shift." *Id.* at 1199. That was true even though the plaintiff had alleged "an institutionalized unwritten policy that mandates" the alleged employment violations. *Id.* Consequently, the Ninth Circuit remanded to the district court for reconsideration on an open record.

Plaintiff uses the term "consistent" to describe a variety of practices. For example, Plaintiff alleges that Defendants "consistently" failed to pay for all hours worked. *See*, *e.g.*, Compl. ¶¶ 6 ("consistent policy or practice of failing to pay"), 7 (same). "Consistent" likely suggests more uniform behavior than "pattern and practice." Merriam Webster defines "pattern" as "frequent or widespread incidence"[4] and "practice" as "a repeated or customary action" or "the usual way of doing something."[5] As *Ibarra* recognizes, neither term suggests uniformity. In contrast, the dictionary defines "consistent" as "marked by harmony, regularity or steady continuity: free from variation or contradiction," and "showing steady conformity to character, profession, belief, or custom."[6] The term thus implies a stronger degree of uniformity than "pattern and practice." In light of the dictionary definitions, Defendants' interpretation of "consistent" as something akin to "universal" or "always" is reasonable.

On the other hand, as this Court has recently held, however, although the term "consistent" may describe a uniform practice of failing to pay when time is worked or a break is missed, it "do[es] not tell us how *often* an employee misses a meal break or rest break," *Young v. Novartis Pharmaceuticals Corp.*, Case No. 17-04390, 2017 WL 4638664, at *3 (N.D. Cal. Oct. 16, 2017) (emphasis added). Nor, by analogy, does it explain how often an employee works time without

---

[4] *See Pattern*, Merriam Webster (2017), available at https://www.merriam-webster.com/dictionary/pattern.

[5] *See Practice*, Merriam Webster (2017), https://www.merriam-webster.com/dictionary/practice.

[6] *See Consistent*, Merriam Webster (2017), https://www.merriam-webster.com/dictionary/consistent.

being paid.[7] Thus, alleging "consistent" failure to pay does not say how often work without pay was actually performed, only that when it was, it was consistently not compensated.

Plaintiff's remaining allegations regarding how frequently work without pay was actually performed vary—he sometimes uses the term "consistently" to describe the performance of such work, and sometimes does not. Because his usage varies, the Court analyzes each allegation in the appropriate section below. However, for the reasons explained above, wherever such work is alleged to have been performed, it is reasonable to infer from the complaint that Defendants failed to pay for it. What is less clear is how often such work is alleged to have occurred.

2. Damages Calculations

    a. Defendants Improperly Double Count Minimum Wage and Overtime Damages

Plaintiff's overtime and minimum wage claims are both premised on the notion that employees were forced to work through their meal breaks and were not paid for that time. Thus, Plaintiff claims both minimum wages and overtime for each given instance of an unpaid break. An employee cannot, however, be awarded double recovery. If an employee's total hours (including the unpaid time) exceeded the overtime threshold of 8 hours per day or 40 hours per week, then the employee would receive overtime damages, not minimum wage damages, for that time. On the other hand, if the employee's total hours fall below the overtime threshold, then the employee would be entitled to minimum wage damages, not overtime damages, for that time.

Thus, how this time should be counted for purposes of calculating the amount-in-controversy depends on whether employees worked more or less than 8 hours per day or 40 hours per week. Plaintiff does not allege that all or even how many employees were full-time. Plaintiff alleges only that Defendants "had a consistent policy or practice of failing to pay Plaintiff and other class members overtime compensation . . . for all hours worked in excess of eight (8) hours a

---

[7] That is also why this case is distinguishable from this Court's prior decision, cited by Defendant, in *Altamirano v. Shaw Industries*, 2013 WL 2950600, at *7 (N.D. Cal. Jun. 14, 2013). There, as here, the plaintiff alleged a consistent violation in that Defendants improperly rounded employees' timecards. The issue here is different—Plaintiff alleges Defendants consistently failed to compensate for all hours worked, but Plaintiff does not (as explained below) allege how frequently such unpaid hours were actually worked.

6

day and/or forty (40) hours a week," Compl. ¶ 7, but does not state how often Plaintiff or other employees actually worked more than 8 hours a day. The closest allegation regarding full or less than full time status simply states that employees were "regularly required . . . to work shifts in excess of five (5) hours." Compl. ¶ 8. Later, he alleges that the "uncompensated hours caused Plaintiff and other class members to work in excess of eight (8) hours on a given day and/or forty (40) hours in a given week," but that allegation says nothing about how frequently this occurred, nor how many class members fit this category—the key term "consistently" is missing from that allegation. Compl. ¶ 32. Nor does Defendants' declaration offer any evidence of how many of its employees were generally full-time, such that any extra unpaid work would presumptively be overtime. *See generally* Lubano Decl. ¶¶ 5-13 (generally referring to them as "non-exempt hourly employees"). Thus, even if every employee is assumed to have worked through the full duration of their meal breaks (2.5 hours a week), it would not follow that that such uncompensated time automatically constitutes overtime rather than minimum wage pay because there is no baseline to determine whether the extra 2.5 hours would push an employee over 8 hours a day or 40 hours a week.

In the absence of such evidence, the unpaid time can be counted only as minimum wage damages, not overtime. Accordingly, Defendant's calculation for overtime damages in the amount of $629,062.50 is unsupported and is disallowed. The Court will therefore discount the overtime damages as duplicative, and will next analyze whether the minimum wage calculations for the same unpaid time are reasonable.

    b. <u>Defendant's Minimum Wage and Liquidated Damages Calculations for Meal Breaks Are Reasonable</u>

"An employee who has not received the minimum wage is entitled to recover the amounts unlawfully withheld, plus additional amounts as penalties and liquidated damages where culpable conduct is shown." *Brewer v. Premier Golf Properties*, 168 Cal.App.4th 1243, 1253 n.8 (2008). Thus, damages calculations would be California's minimum wage multiplied by the number of unpaid hours worked, and then doubled to include liquidated damages.

  Defendants here estimate the number of unpaid hours worked at 2.5 hours per employee

7

per week; in other words, as if each employee had worked through the full meal period each week. Plaintiff alleges that he "and other class members were consistently required to work through their meal periods due to Defendants' policy and practice of requiring them to finish loading and unloading containers on a strict schedule before allowing them to take a meal break, which was not provided at all at times." Compl. ¶ 27. With respect to Plaintiff and some group of class members, it is reasonable to infer that the full meal period was worked because Plaintiff states that they were "consistently required to work through their meal periods." *Id.*

Even assuming that the violation affected all class members, Defendant still will not meet the amount-in-controversy. Thus, the Court will fully credit Defendants' assumption that all class members were required to "consistently" work through their rest breaks. Based on that assumption, Defendants calculate the minimum wage damages by multiplying the average minimum wage over the class period ($9) by 2.5 hours a week (5 meal breaks worked for 30 minutes per week) by the number of work weeks (13,420), and then doubling it to capture liquidated damages, for a total of $603,900 in unpaid wages and liquidated damages for meal breaks through which employees had to work.

### c. Calculations of Statutory Penalties for Meal and Rest Break Violations Are Reasonable

Plaintiff also brings claims statutory penalties under California Labor Code § 226.7 for failure to provide meal and rest breaks. That statute provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable [law]." Cal. Labor Code § 226.7(b). An employer who fails to provide the required break period "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." *Id.* § 226.7(c). Moreover, the breaks must be "uninterrupted." *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal.4th 1004, 1035 (2012). This penalty is in addition to wages owed and liquidated damages. These claims are governed by a 3-year statute of limitations, *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094 (2007), but can be recovered for a 4-year period under the UCL. *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) ("[T]he UCL statute of limitations will

apply to a UCL claim, even when that claim is based on an underlying law with its own separate statute of limitations."); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000).

Defendants' assumption of a 100% violation rate is reasonable in this context. With respect to meal breaks, Plaintiff alleges that Defendants "regularly required" employees "to work shifts in excess of five (5) hours without providing them with uninterrupted meal periods of not less than thirty (30) minutes." Compl. ¶ 8. Thus, it is reasonable to assume that all employees worked shifts that were long enough to entitle them to a meal break. Plaintiff also alleges that employees "were consistently required to work through their meal periods." *Id.* ¶ 27. Although Plaintiff alleges that employees only missed their *entire* meal period "at times," failure to provide anything less than a full meal period may give rise to liability under § 226.7. *Brinker*, 53 Cal.4th at 1035. Thus, a 100% violation rate for purposes of the meal period penalties is reasonable.

Similarly, with respect to rest breaks, Plaintiff alleges that Defendants "consistently failed to provide . . . paid rest breaks of not less than ten (10) minutes for every work period of four (4) or more consecutive hours." Compl. ¶ 9. Plaintiff also alleges that employees "consistently worked consecutive four (4) hour shifts each day without being provided proper rest breaks." *Id.* ¶ 40. Because Plaintiff alleges that employees "consistently" worked long enough to be entitled to rest breaks and "consistently" were not provided those rest breaks, a 100% violation rate is reasonable.

Accordingly, Defendants' calculations for meal and rest-break statutory penalties based on a 100% violation rate over a 4-year period are reasonable based on the allegations of the complaint. This category of damages reasonably totals **$1,677,500** (meal periods: ($12.50/hour * 5 violations per week * 13,420 workweeks) and rest periods: ($12.50/hour * 5 violations/week * 13,420 workweeks)).

d. Defendants' Waiting Time Penalties Are Inflated

Waiting time penalties are due if an employer "fails to pay . . . *any* wages" due upon termination. Cal. Labor Code § 203(a) (emphasis added). Plaintiff alleges a "*consistent* policy of failing to pay all wages due." Compl. ¶ 11 (emphasis added). Plaintiff also alleges that class

9

members were "*consistently required*" to work portions of their meal breaks. *Id.* ¶ 27 (emphasis added). Thus, it is fair to infer that every employee has incurred at least some unpaid time every week entitling them to waiting time penalties 100% of the time.

However, the size of the penalty depends on the employee's regular wages. Cal. Labor Code § 203 (as penalty, "the wages . . . shall continue" for up to 30 days after termination). Defendants' calculation assumes that the employees work full-time shifts, and therefore calculate the penalty based on 40 hours a week multiplied by the average rate of pay. However, as noted above, Plaintiff's complaint does not allege that all employees were full-time. At best, Plaintiff alleges that class members were regularly required to work 5 hour shifts. Compl. ¶ 8. Defendants do not submit any evidence to support the assumption that all employees worked full-time. If anything, Defendants appear to concede that at least some employees were part-time. *See* Lubano Decl. ¶ 14 (stating that two or more part time employees were not counted as one full time employee). Thus, in the absence of additional evidence, the appropriate number of hours for this calculation based on the complaint is 5 per day, not 8.

Defendants' calculation of $1,883,520.00 in waiting time penalties must therefore be adjusted. The appropriate calculation is the product of the average hourly wage for the terminated employees ($12.00), 5 hours a day for 30 days. *See Mamika v. Barca*, 68 Cal.App.4th 487, 492 (1998) (trial court erred by limiting penalty's to one month's salary because "[u]nder this scheme, unpaid wages continue to accrue on a *daily* basis for up to a 30-day period. Penalties accrue not only on the days that the employee might have worked, but also on nonworkdays"). The number of terminated class members (654). The adjusted sum for this category of damages is $1,177,200.00.

e. <u>Inaccurate Wage Statements</u>

Inaccurate wage statement penalties do not depend on how many unpaid hours were worked, but whether *any* unpaid hours were worked. Plaintiff specifically alleges that Defendants "consistently failed to provide . . . timely, accurate, and itemized wage statements," Compl. ¶ 10, suggesting that a 100% violation rate is a reasonable assumption, particularly in conjunction with the allegation that employees consistently worked through their meal breaks. As a penalty,

10

California law provides that the employee is "entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)[.]" Cal Labor Code § 226(e)(1); *id.* § 226(e)(2)(B). This claim has a statute of limitations of one year. Cal. Civ. Proc. Code § 340(a).

Randstad estimates that it employed 201 class members from June 15, 2016 to July 24, 2017 (the liability period). Lubrano Decl. ¶ 11. It estimates those class members worked 2,628 workweeks. *Id.* ¶ 12. That is an average of 13 workweeks per employee during that period. *Id.* Thus, penalties are correctly calculated at (1 workweek * $50) + (12 workweeks *$100) * (201 employees) for a total of **$251,250**. Defendants' calculation is therefore reasonable.

        f.      <u>Pre-Attorneys' Fees Total Damages Do Not Exceed $5 Million</u>

The following table summarizes Defendants' numbers and the Court's revised numbers based on the analysis above.

| Category | Defendants' Estimate | Revised Estimate |
|---|---|---|
| Meal and Rest Break Statutory Penalties | $1,677,500 | $1,677,500 |
| Waiting Time Penalties | $1,883,520 | $1,177,200 |
| Inaccurate Wage Penalties | $251,250 | $251,250 |
| Minimum Wages Plus Liquidated Damages | $603,900 | $603,900 |
| Overtime Violations | $629,062.50 | $0 |
| **Total (w/o attorneys' fees):** | **$5,045,232.50** | **$3,709,850** |

Thus, without attorneys' fees, Defendants' total damages are below the $5 million threshold.[8]

---

[8] At the hearing, counsel for XPO argued that the Court should also consider Plaintiff's prayer for relief seeking disgorgement of profits under the UCL. *See* Compl., Prayer for Relief ¶ 9. However, "nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1152 (2003). Though "[u]nlawfully withheld wages may be recovered as restitution in a UCL action," *Cortez*, 23 Cal.4th at 173, the calculations above already account for the unlawfully withheld wages. In any case, even if potential disgorgement of profits could be included for amount-in-controversy purposes, Defendants did not submit any evidence to approximate the value of such ill-gotten profits beyond the unlawfully withheld wages themselves.

11

g. Defendants' Use of a 25% Benchmark for Attorneys' Fees Is Not Reasonable

Defendants argue that attorneys' fees are reasonably estimated at 25% because that is the benchmark used under the common-fund approach. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). However, as this Court recently observed, the benchmark used to calculate attorneys' fees based on a common fund is conceptually distinct from the proper method to estimate attorneys' fees for calculating the amount-in-controversy in the context of a jurisdictional amount-in-controversy. *See Scott v. Credico (USA) LLC*, Case No. 17-cv-08246-EMC, 2017 WL 4210994, at *3 (N.D. Cal. Sep. 22, 2017) ("Because contingency fees based on a common fund recovery are not damages, they should not be counted as part of the amount in controversy."). Rather, attorneys' fees that may be included in the jurisdictional amount-in-controversy are those authorized by an underlying statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). Plaintiff seeks, and the statutes authorize, such an award here. *See* Compl., Prayer for Relief ¶ 14. Thus, it is proper to include *some* amount of attorneys' fees in the amount-in-controversy calculation.

The *amount* of fees under a fee shifting statute, however, generally "should be calculated based on the number of hours worked at a reasonable hourly rate (i.e., the lodestar)." *Scott*, *supra*, at *3 (citing *Winterrowd v. Am. Gen. Annuity, Ins. Co.*, 556 F.3d 815, 826-27 (9th Cir. 2009)). Even assuming that such fees would be estimated based on the full length of the potential litigation and not just based on fees incurred as of the time of removal (an issue on which courts have divided[9]), Defendants have not presented any evidence to support an estimate of Plaintiff's attorneys' fees based on a lodestar. Nor have Defendants have provided any basis for the Court to conclude that a 25% benchmark would provide a reasonable proxy for a lodestar estimate either. They have provided no estimate of how long the litigation might proceed, how long a trial would be, how many hours of work could reasonably be expected, and so on. Defendants stated at the

---

[9] *See*, *e.g.*, *Renazco v. Unisys Tech. Servs., L.L.C.*, No. C-14-4204 EMC, 2014 WL 6882589 at *5 (N.D. Cal. Dec. 5, 2014); *Brown v. Chipotle Mexican Grill, Inc.*, No. 16-cv-00174-EMC, 2016 WL 3402619, at *1 n.1 (N.D. Cal. Jun. 21, 2016).

12

hearing that they have no way of knowing how many hours Plaintiff's counsel might incur, but a reasonable basis for such an estimate could include a review of lodestars claimed in comparable employment cases, but they present no such evidence.

In any case, even if 25% of $3,709,850 were a reasonable benchmark, that would only bring the total amount-in-controversy to $4,637,312.50—still below the jurisdictional threshold. Accordingly, even using a 25% benchmark to estimate attorneys' fees, Defendants cannot satisfy the jurisdictional requirements of CAFA.

### III. CONCLUSION

For these reasons, Plaintiff's motion to remand to the Superior Court of Alameda is **GRANTED**. Defendant's motion to transfer venue is accordingly **DENIED** as moot. The Clerk of the Court is instructed to close and remand this case to the Superior Court of Alameda.

This order disposes of Docket Nos. 39 and 44.

**IT IS SO ORDERED**.

Dated: January 9, 2018

_____
EDWARD M. CHEN
United States District Judge

13